Tyler B. Ayres, Bar No. 9200
Dan Baczynski, Bar No. 15530
AYRES LAW FIRM
12339 S. 800 E. Ste. 101
Draper UT 84020
(801) 255-5555 Phone
tyler@ayreslawfirm.com
daniel.ayreslaw@gmail.com
Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| SUSAN NELSON,<br><br>    Plaintiff,<br><br>vs.<br><br>RIVR MEDIA, and A&E NETWORKS,<br><br>    Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>Case No: 2:16-cv-00228<br><br>Judge: David Nuffer |

Plaintiff Susan Nelson (Susan), by and through her attorney, Ayres Law Firm, and for her Complaint against defendants demands a jury trial and states as follows:

**JURISDICTION AND VENUE**

1. Plaintiff brings her complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

2. Venue is proper before this Court pursuant to 28 U.S.C. § 1391 because Utah is the judicial district in which a substantial part of the events giving rise to the claim occurred.

3. Defendants are subject to personal jurisdiction by availing themselves of the laws of the State of Utah.

## PARTIES

4. Susan is a natural born person over the age of 18 and at all times relevant was a resident of Salt Lake County, State of Utah.

5. Defendant RIVR Media, LLC, is a Tennessee limited liability corporation with its principal office in Knoxville, Tennessee. RIVR Media has availed itself of Utah's laws by conducting business in the state. Under information and belief, Jessi Christensen (Christensen) and Shanell Derieux (Derieux) are employees of RIVR Media.

6. Defendant A&E Networks (A&E) is an American media corporation headquartered in New York City, New York. A&E runs the A&E cable channel which is broadcast throughout the United States and Canada, including the State of Utah.

## GENERAL ALLEGATIONS

7. On or about December 13, 2014, Melanie Nelson (Melanie) was residing with her mother, Susan, in the mother's residence located at 4220 South 1355 West, Taylorsville, Utah.

8. Prior to December 13, 2014, a film crew from RIVR Media, LLC, (RIVR Media) offered to pay Melanie $5,000 per episode to appear in a television program they were filming in Utah called "Escaping Polygomy."

9. RIVR Media also employed DeRieux and Christensen to appear and participate in "Escaping Polygamy".

10. The premise of "Escaping Polygamy" involves DeRieux and Christensen convincing individuals from polygamist families to run away from their homes.

11. RIVR Media wanted Melanie to appear on "Escaping Polygamy" as an individual who has been convinced to leave her home.

12. On December 13, 2014 Melanie informed her mother Susan that although she did not want to move out, Melanie had already committed to RIVR Media that she would move in with some friends so she could participate in the television filming. Melanie disclosed to Susan that RIVR Media was pressuring her to move out of her home.

13. Melanie disclosed to Susan that the friends she intended to live with were Cody Castro and his mother, Sylvia Castro.

14. Susan had information that Cody Castro and his mother were involved in possible illegal activity in their home and became concerned and fearful for her daughter's safety.

15. Consequently, Susan invited some family members to her home to discuss alternative living arrangements with Melanie, such as an apartment for Melanie that Susan and her family offered to pay for.

16. While Melanie and her family were discussing alternative living arrangements, Cody Castro and a friend, along with DeRieux and Christensen, arrived at Susan's home in an effort to pressure Melanie into leaving Susan's home.

17. Castro, Castro's friend, DeRieux, and Christensen illegally trespassed into Susan's home by reaching through a doggie door at the rear of the home, unlocking the door, and letting themselves into the residence and into the room where Melanie and other family members were discussing Melanie's possible living arrangements.

18. Once inside, one of the uninvited male persons put his arms around Melanie's waist and attempted to forcibly remove her from her room while verbally encouraging her to leave with them.

19. Melanie responded that she did not want to leave without her personal items and the man began to drag Melanie out of the room.

20. Meanwhile, a cameraman from RIVR Media (also uninvited) illegally entered Susan's home through the same backdoor and began filming the exchange with Melanie, her family, and the others who had let themselves into the home.

21. Although Susan and her family members were able to get the uninvited guests and RIVR Media to leave the home, the RIVR Media film crew remained on their property and attempted to film Susan, Melanie, and their family through the windows of their home.

22. Susan and her family members called the police to assist them in removing the film crew, Derieux, Christensen, and Castro from their property.

23. While waiting for the police to arrive, Derieux, Christensen, and the RIVR film crew entered the home again and began filming the activities inside Susan's home once again.

24. Susan and her family once again forced the film crew to leave the home. After leaving the home the film crew remained on Susan's porch.

25. Officer Ottley of the Unified Police Department asked Susan if she would grant Melanie and her friends permission to enter the house in order to obtain Melanie's personal items.

26. Susan refused this request.

27. Despite the lack of permission, the officer opened the door to the Susan's residence and granted Melanie and her friends access to the home in order for Melanie to get her property from the residence.

28. Officer Ottley also allowed RIVR Media to enter the home.

29. Melanie and her friends took about thirty minutes to move her belongings out while Officer Ottley allowed RIVR Media to film the entire event.

30. A&E aired the episode depicting Melanie Nelson's departure from her home on July 14, 2015 on the A&E cable channel as Season 1, Episode 2 of "Escaping Polygamy".

31. In episode 2 of "Escaping Polygamy", RIVR Media and A&E falsely represented that Susan and her family were physically preventing Melanie from leaving her home.

32. In episode 2 of "Escaping Polygamy", DeRieux and Christensen defamed Susan and her family by making false representations about Melanie and Susan's lifestyle and the condition of their home. DeReiux and Christensen stated the Susan's house was unfinished, alluding to a home featured earlier in the episode that was almost condemned. DeRieux and Christensen also stated the house smelled of rotten vegetables, alluding to comments made earlier in the episode that polygamists ate only rotten vegetables because they could not afford better food.

33. Following the altercation with defendants and Officer Ottley, Susan began suffering from heart issues because of the pain and stress during and following the events on December 13, 2014, as well as from the false representation of her and her family in the "Escaping Polygamy" episode that was filmed without her permission or approval.

### FIRST CLAIM FOR RELIEF
*Trespass to Land against RIVR Media*

34. Susan incorporates by reference all preceding paragraphs.

35. Christensen and DeRieux were acting within the scope of their employment at all time relevant, and RIVR Media is liable for their actions pursuant to the doctrine of respondeat superior.

36. RIVR Media's film crew, DeRieux, and Christensen entered into Susan's home and onto Susan's private property multiple times on December 13, 2014.

37. RIVR Media, DeRieux, and Christensen entered Susan's property illegally and without Susan's permission.

38. RIVR Media, uninvited, entered Susan's house through the backdoor in order to film the exchange with her family.

39. After Susan requested that RIVR Media, DeRieux, and Christensen leave the property, they continued to remain on the property.

40. When the Unified Police Department arrived, RIVR Media, DeRieux and Christensen once again trespassed into Susan's home without their permission.

41. As a result of RIVR Media's trespass, Susan was forced to replace the backdoor of her home.

42. As a direct and proximate result of RIVR Media's trespass, Susan has suffered severe and substantial damages.

## SECOND CLAIM FOR RELIEF
*Intentional Infliction of Emotional Distress against A&E and RIVR Media*

43. Susan incorporates by reference all preceding paragraphs.

44. Christensen and DeRieux were acting within the scope of their employment at all time relevant, and RIVR Media is liable for their actions pursuant to the doctrine of respondeat superior.

45. RIVR Media engaged in extreme and outrageous conduct by entering into a contract with Melanie forcing Melanie to leave her family, pressuring Melanie to immediately move out, hiring DeRieux and Christensen to enter into the Susan's home to assist Melanie in moving out, illegally entering Susan's home and property on multiple occasions, and finally filming the event.

46. A&E engaged in extreme and outrageous conduct by publishing DeRieux, Christensen, and RIVR Media illegally entering into Susan's house and forcing Melanie from her family's home.

47. As a direct and proximate cause of A&E and RIVR Media's conduct, Susan has suffered severe emotional distress.

### THIRD CLAIM FOR RELIEF
*Intrusion upon Seclusion against RIVR Media*

48. Susan incorporates by reference all preceding paragraphs.

49. Christensen and DeRieux were acting within the scope of their employment at all time relevant, and RIVR Media is liable for their actions pursuant to the doctrine of respondeat superior.

50. The Nelson family conducts private affairs within their home.

51. RIVR Media, DeRieux, and Christensen physically intruded into Susan's home, which is a place of seclusion.

52. DeRieux and Christensen intruded into the private affairs of the Nelson family by interfering with the family's conversations with Melanie regarding moving out.

53. RIVR Media intruded into the private affairs of the Nelson family on December 13th, 2013, both by filming while uninvited inside of Susan's home and also by filming through the home's windows while outside and still on plaintiff's property.

54. DeRieux, Christensen, and RIVR Media were never given permission to enter into Susan's house or to film the private affairs of Susan's family.

55. RIVR Media and A&E later published the events of December 13, 2014 on their television show "Escaping Polygamy". The episode aired on July 14, 2015.

56. DeRieux, Christensen, and RIVR Media's intrusions would be considered highly offensive to a reasonable person.

57. As a direct and proximate result of DeRieux, Christensen, and RIVR Media's actions, Susan has suffered mental pain and suffering, emotional distress, mental anguish, and loss of enjoyment of life.

**FOURTH CLAIM FOR RELIEF**
*Defamation against*
*RIVR Media and A&E.*

58. Susan incorporates by reference all preceding paragraphs.

59. Christensen and DeRieux were acting within the scope of their employment at all time relevant, and RIVR Media is liable for their actions pursuant to the doctrine of respondeat superior.

60. Susan and the Nelson family are private citizens with an expectation of privacy.

61. DeRieux, Christensen, and RIVR Media made false statements regarding Susan's lifestyle and home.

62. DeRieux, Christensen, and RIVR Media falsely represented that Susan's home was unfinished, alluding to a dilapidated home shown earlier in an episode of "escaping Polygamy".

63. DeRieux, Christensen, and RIVR Media falsely represented that Susan and her family were physically preventing Melanie from leaving her home.

64. DeRieux, Christensen, and RIVR Media falsely represented that the Susan's home smelled like rotten vegetables, alluding to earlier statements that polygamists cannot afford food and therefore eat rotten vegetables.

65. A&E published the false statements on its network on July 14, 2015.

66. DeRieux, Christensen, and RIVR Media knew the statements they made and published were false.

67. A&E acted negligently in publishing statements against Susan.

68. Though Susan was not personally identified in the publication, sufficient information was published as to reasonably identify Susan as the subject of the misrepresentations.

69. As a direct and proximate result of the false statements and subsequent publication, Susan has suffered damage to her reputation, along with mental pain and suffering, emotional distress, mental anguish, and loss of enjoyment of life.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests this court enter judgment against defendants and provide the following relief:

   a. Compensatory and special damages in whatever amount exclusive of costs and interest, that Plaintiff is found to be entitled;

   b. Punitive/exemplary damages against defendants in whatever amount, exclusive of costs and interest, that Plaintiff is found to be entitled;

   c. Such other and further relief as the court deems appropriate.

Dated this 21st day of March, 2016.

/s/ Daniel Baczynski
Daniel Baczynski
AYRES LAW FIRM
Attorney for Plaintiffs

10